RETURN TO:
REGIONS BANK D/B/A REGIONS MORTGAGE
2050 PARKWAY OFFICE CIRCLE
BIRMINGHAM, ALABAMA 35244

## MODIFICATION AGREEMENT

THE STATE MAINE §

COUNTY OF FRANKLIN §     KNOW ALL MEN BY THESE PRESENTS:

Recitals

Reference is hereby made to that one certain Promissory Note (the "Note") dated **JULY 3, 2007**, in the original principal sum of $ **159,000.00**, executed by **TRACEY L. DOIRON, AN UNMARRIED WOMAN AND NEIL J. TUTTLE, AN UNMARRIED MAN** (herein referred to as "Borrower" whether one or more), payable to the order of **REGIONS BANK D/B/A REGIONS MORTGAGE** ("Lender"), and said Note being secured by, among other instruments, that certain Deed of Trust, Mortgage or Security Deed (the "Security Instrument") of even date therewith duly recorded in **BOOK 2925, PAGE 187**, in the Real Property Records of **FRANKLIN** County, **MAINE**, the above said instruments concerning, encumbering and creating liens against the following described property (the "Property"), to-wit:

> **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES;** and being the same property located at **5 EASTERN AVENUE, JAY, MAINE 04239.**

WITNESSETH:

WHEREAS, Borrower now desires to modify the Note and ratify said liens against the property; and

WHEREAS, Lender, the legal owner and holder of said Note and liens securing same, in consideration of the premises and at the request of the Borrower has agreed to modify the Note as hereinafter provided; and

WHEREAS, the Borrower, in consideration of the modification of the Note as hereinafter set forth by the legal owner and holder thereof, has agreed to ratify said Note and indebtedness evidenced thereby and reconfirm Borrower's unconditional promise to pay to the order of **REGIONS BANK D/B/A REGIONS MORTGAGE** at its offices at **12725 MORRIS ROAD EXTENSION, SUITE 100, ALPHARETTA, GEORGIA 30004**, or at such other place as the holder of said Note may designate in writing, the principal sum of **ONE HUNDRED FIFTY-NINE THOUSAND and NO CENTS DOLLARS ($ 159,000.00 )** or so much thereof as may have been or may be advanced under the Note, together with interest thereon at the rates herein provided, in accordance with the terms thereof and hereof from and after the effective date of this Agreement until maturity.

Page 1 of 8 
Initials


EXHIBIT E

## EXHIBIT A
## LEGAL DESCRIPTION

A certain lot or parcel of land, with the buildings and improvements thereon, situated in the Town of Jay, County of Franklin and State of Maine and being more particularly described as follows, viz:

Commencing at an iron pin set in the ground at the Northwest corner Lot #96 as set forth in the Plan referred to above; thence proceeding Northerly, along the East bounds of Eastern Avenue, so-called, ninety (90) feet, more or less; thence proceeding Easterly one hundred and eleven feet and six (111 ft. and 6 in.) inches, more or less, to land of Leon Dow; thence proceeding Southerly, along said land of Leon Dow, ninety (90) feet, more or less, to the Northeast boundry of Lot #96; thence proceeding Westerly, along the North bounds of said Lot #96, one hundred and eleven feet, (111) more or less to the East bounds of Eastern Avenue, so-called, and same being the place of beginning.

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree that the Note and Security Instrument are hereby renewed, extended and/or modified as follows:

I.   Items 1 through 12 below shall, as applicable, amend, modify and replace those items in the Note as originally written to the contrary, as follows:

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **159,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **REGIONS BANK D/B/A REGIONS MORTGAGE**  I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **6.500** %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Sections 4 or 5 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on **SEPTEMBER 1, 2008**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payments will be applied as of its scheduled due date and will be applied to interest before principal. If, on **AUGUST 1, 2038**, I still owe amounts under this Note, I will pay those amount in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **P.O. BOX 2153, DEPT. 2520, BIRINGHAM, AL 35287-2520** or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **1,004.99**. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 or 5 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

(A)    Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **AUGUST, 2013**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most



recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 75/100** percentage points (**2.750 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **11.500%** or less than **2.750 %**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO AND 0/100** percentage point(s) (**2.000 %**) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.500 %**, which is called the Maximum Rate."

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

### 6. LOAN CHANGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as partial prepayment.

Page 3 of 8 
Initials

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of the different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE.

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor and notice of intention to accelerate. "Presentment" means the right to require the Note Holder to demand payment of the amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as the Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interest transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interest transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

__X__     II. The Construction Rider to the Note is herein deleted in its entirety.

(Check and Complete if Applicable):

__X__     III.     The Security Instrument shall be and hereby is amended as follows:

__X__     (A)     Reference to the maturity date of the debt secured by the Security Instrument is changed from **FEBRUARY 1, 2038** to **AUGUST 1, 2038**.

Page 5 of 8    _____
Initials

| | | |
|---|---|---|
| __N/A__ | (B) | Reference to the amount of the debt secured by the Security Instrument is **NOT CHANGED.** |
| __X__ | (C) | The Adjustable Rate Rider attached hereto as Exhibit "B" is hereby incorporated into and made a part of the Security Instrument. |

Further, it is expressly agreed that for and in consideration of this Modification Agreement, Borrower hereby releases and forever discharges Lender and its officers, directors, counsel, employees, agents, predecessors, successors, and assigns from all causes of action, claims, rights, and controversies, known or unknown, which Borrower had, now has, or may hereafter acquire which relate to, are based on, arise out of, or are in any way connected with any acts of Lender or its above affiliates occurring prior to the execution of this Agreement and relating in any manner to the above described Note or Security Instrument or the Property described herein or therein. This is a general release of all possible claims and causes of action of every kind and character related to the above described subject matter and is to be interpreted liberally to effectuate maximum protection of Lender and its above affiliates.

The Borrower hereby ratifies Lender's liens and/or security interests against the Property until the Note as so hereby modified has been fully paid, and agrees that this renewal, extension and/or modification shall in no manner affect or impair the Note or the liens and/or security interests securing same and that said liens and/or security interests shall not in any manner be waived, but are acknowledged by Borrower to be valid and subsisting, the purpose of this instrument being simply to modify the Security Instrument and the time and manner of payment of the Note and ratify all liens and/or security interests securing same, and the Borrower further agrees that all terms and provisions of the Note, the Security Instrument and the other instruments creating or fixing the liens and/or security interests securing same shall be and remain in full force and effect as therein written, except as otherwise expressly provided herein.

A breach or other default of any of the terms of this Agreement by Borrower shall constitute a breach or default under the Note and Security Instrument, and Lender shall thereupon have the right to seek all remedies available to it under the aforesaid loan instruments.

Borrower covenants and agrees that the rights and remedies of Lender under this Agreement are cumulative of, are not in lieu of but are in addition to, and their exercise or the failure to exercise them shall not constitute a waiver of, any other rights and remedies which Lender shall have under the Note or the Security Instrument.

It is agreed that time and the unimpaired security of Lender are of the essence of this Agreement.

Borrower covenants and agrees that this Agreement represents the final agreement between Borrower and Lender relating to the above described subject matter and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Except as



expressly provided herein, the Loan and all instruments evidencing and securing same shall remain unaffected, unchanged and unimpaired. In the event of a conflict between the terms of the Note or this Agreement, the terms hereof shall be controlling. By entering into this Agreement, the parties have no intention whatsoever to extinguish or discharge the indebtedness or liens and/or security interests evidenced by the loan instruments or to effect any novation. Borrower further covenants and agrees that there are no unwritten oral agreements between the parties hereto relating to the above described subject matter.

EXECUTED this the 30th day of JULY, 2008, to be effective JULY 31, 2008.

WITNESS:

Borrower's Name **TRACEY L. DOIRON**

Borrower's Name **NEIL J. TUTTLE**

ACCEPTED AND AGREED TO BY
THE OWNER AND HOLDER OF SAID NOTE:

**REGIONS BANK D/B/A REGIONS MORTGAGE** (Lender)

WITNESS:

By: Karen S. Wissner
Name: KAREN S. WISSNER
Title: VICE PRESIDENT

THE STATE OF **FLORIDA** §
COUNTY OF Pinellas §

BEFORE ME, the undersigned authority, on this day personally appeared Karen S. Wissner, as Vice Pres. of REGIONS BANK D/B/A REGIONS MORTGAGE, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated, as the act and deed of said **BANK**.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 1st day of August, 2008.

Notary Public in and for
the State of **FLORIDA**

My Commission Expires: _____

Name: _____



MARGARET A. BONE
Commission DD 682924
Expires July 22, 2011
Bonded Thru Troy Fain Insurance 800-385-7019

Page 7 of 8 _____
Initials

THE STATE OF **MAINE** §

COUNTY OF Franklin §

BEFORE ME, the undersigned authority, on this day personally appeared **TRACEY L. DOIRON, AN UNMARRIED WOMAN AND NEIL J. TUTTLE, AN UNMARRIED MAN**, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the **30th** day of **July**, **2008**.

My Commission Expires:

August 4, 2012

Larry A. Stewart
Notary Public in and for
the State of **MAINE**

Name: Larry A. Stewart

SEAL

**FRANKLIN COUNTY**
Susan A. Black
Register of Deeds

Page 8 of 8   TD
                Initials